IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Jason Quinn | ) | Civil Action No.     0:21-2950-TLW |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| The United States of America | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Plaintiff, above named, complaining of the Defendant herein, would respectfully show unto the Court:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff Jason Quinn is a citizen and resident of York County, South Carolina.

2. Plaintiff brings this complaint against the United States (for Senator Bernie Sanders and his agents) pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq and 28 U.S.C. § 1346(b)(1) for money damages as compensation for the injury to Plaintiff, caused by the acts of employees, servants, and agents of the United States Government, working in the United States Senate.

3. Upon information and belief, Defendant engaged in the ownership, oversight, management, direction, creation of content, and operation of Senator Bernie Sanders' social media accounts, including but not limited to social media accounts on Facebook (Facebook Page "U.S. Senator Bernie Sanders") and YouTube (YouTube Channel "Senator Bernie Sanders").

4.      Venue in the District of South Carolina is proper because injury to Plaintiff and a material part of the circumstances and events occurred and continue to occur in York County, South Carolina.

5.      Quinn has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims act by giving formal notice in writing to the United States through the filing of a Form 95 with the Office of the United States Senate Sergeant at Arms. The Office of the United States Senate Sergeant at Arms denied the Form 95 claim by letter postmarked March 16, 2021.

## STATEMENT OF FACTS

6.      Quinn is a professional bass fisherman whose career spans over twenty years.

7.      Quinn's enduring and successful career in bass fishing resulted in many sponsorships over the course of his career. The most significant and certainly the most visible of Quinn's sponsorships was his association with Evan Williams Bourbon.

8.      In 2003, Quinn became the first professional bass fisherman sponsored by Evan Williams Bourbon ("Evan Williams"). As part of the sponsorship deal, Quinn was supplied a one-of-a-kind custom professional bass fishing boat that was designed in part by Quinn and wrapped in images displaying the Evan Williams logo and branding.

9.      Quinn additionally received as part of the sponsorship with Evan Williams a wrapped tractor-trailer that displayed images of Quinn and his one-of-a-kind Evan Williams boat as shown below:



10.     The Evan Williams wrapped bass fishing boat became synonymous with Quinn's professional identity and a unique and easily identifiable part of Quinn's persona.

11.     Upon information and belief, Defendant created a video entitled "5 Reasons the Border Wall Won't Stop Drugs" ("Video").

12.     Defendant posted the Video multiple times across different social media platforms.

13.     The Video discusses five ways a southern border wall would fail to stop illegal drugs from being smuggled into the United States.

14.     The Video explains as the fifth reason a border wall would fail to stop drugs from entering the United States, that drug smugglers travel by sea. The narrator states that drug smugglers once

used fishing boats, while an image of a wood fishing boat is shown, and the narrator continues to explain that smugglers would hide drugs amidst the ice, shrimp, or fish.

15. The narrator then states that drug smugglers "evolved" and moved towards speed boats, and "faster speed boats now".

16. As the narrator speaks of drug smugglers now using speed boats to transport drugs, video footage of Jason Quinn on his Evan Williams wrapped boat are portrayed. Screen captures of the narration displayed over images of Jason Quinn on his Evan Williams wrapped boat from the Video as follows:



4



17. The Video was posted to the Senator's official Facebook page on multiple occasions, where **it was viewed more than 4 million times**.

18. Quinn is informed and believes that each time the Video was published on Senator Sanders' Official Facebook page, the Video received a minimum of 4.1 million views.

19. Quinn is informed and believes the Video was posted to the Senator's Official YouTube channel, where it received a minimum of 3,000 views.

20. Upon information and belief, The Video remained posted on the Senator's official Facebook page and YouTube channel until sometime after April 10, 2020.

21. Quinn is informed and believes the Video may have been published on other social media platforms maintained by Senator Sanders and his agents as well.

22. Quinn has received numerous inquiries since the posting of the Video expressing concern about Quinn's depiction in the Video.

23.     Senator Sanders and his agents (upon information and belief, also Federal employees) did not obtain consent or seek or receive Quinn's permission to use his likeness or identity.

24.     Defendant knew or should have known the assertions contained in the Video were false.

25.     Defendant also knew, or should have known, these assertions were extremely harmful to Quinn.

26.     Despite this knowledge, the Defendant continued to publish or caused to be published these extremely harmful statements regarding Quinn.

27.     Quinn's livelihood was and is based in large part on his persona and compensation for the commercial use of his name and identity.

28.     Defendant did not have Quinn's consent to publish--- to millions of viewers

29.     Plaintiff brings this action in order to vindicate an egregious, false association created by the Video whereby Defendants suggested Plaintiff is in any way associated in criminal activities and, specifically, that he is any way associated with the trafficking of illegal drugs.

30.     Plaintiff has associated himself with conservative causes and Republican political candidates throughout his career. Quinn additionally brings this action to vindicate the false association created by Defendant suggesting Quinn supports Senator Sanders, an association that directly conflicts with Quinn's political and social values.

## FOR A FIRST CAUSE OF ACTION
### Invasion of Privacy
### (Wrongful Appropriation of Personality and Infringement on the Right of Publicity)

31.     Plaintiff Quinn realleges each allegation contained in all of the above paragraphs as if set forth herein verbatim.

32. Quinn's distinct persona is readily identifiable and widely known. As such, Defendant's unauthorized use of Quinn's image in the Video invoked Quinn's identity in the minds of the public.

33. The Video's assertions and implications of and concerning Plaintiff Quinn were false.

34. Defendant, including Senator Sanders and his agents, used Quinn's identity or likeness for Senator Sanders' benefit.

35. As a result of Defendant's unauthorized use of Quinn's identity in the video, Quinn has been damaged in an amount which exceeds $75,000.

36. Defendant violated Quinn's exclusive right to publicize and profit from his name, likeness, and personal identity

37. At the time of this filing, Defendant has still not compensated Quinn for the use of his likeness.

38. Defendant's usurpation of Quinn's identity has caused and will cause irreparable harm to Quinn.

39. As a direct and proximate result of Defendant's acts and omissions in publishing the Video to many millions of people accusing Quinn of criminal activity and associating Quinn with Senator Sanders. Plaintiff has suffered actual damages in the form of embarrassment, humiliation, mental suffering, and damage to the commercial value of his persona.

40. Quinn is additionally entitled to compensation from Defendant for the use of his identity.

41. As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff suffered damage as is otherwise set forth in this Complaint.

## FOR A SECOND CAUSE OF ACTION
### (Negligence)

42. Plaintiff realleges each allegation contained in all of the above paragraphs as if set forth herein verbatim.

43. Defendant had a duty not to use Plaintiff's identity, image, or likeness without his consent. Defendant breached this duty, as Defendant did not seek or receive Plaintiff's permission to use his identity or likeness.

44. Defendant had a duty to act with a reasonable level of care prior to publishing the Video accusing Plaintiff of criminal activity and associating Quinn with Senator Sanders.

45. Defendant violated this duty by failing to do any reasonable fact checking before publicizing false accusations of criminal activity by Quinn to millions of people.

46. Defendant was all negligent in violating the above-described duties. were all negligent, grossly negligent, and reckless in violating the above-described duties.

47. As a direct and proximate result of Defendant's acts and/or omissions, Plaintiff suffered actual damage.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for actual damages, special damages, and consequential damages in an amount to be determined at the trial of this action, for the costs and disbursements of this action and for such other and further relief as this Court deems just and proper.

(*Signature page to follow*)

LAW OFFICES OF MICHAEL L. BROWN, JR.

S/ Zachary Merritt

_____

Zachary Michael Merritt
Federal ID: 12250
PO Box 1025
Rock Hill, SC 29731
(803) 328-8822
zach@mlblaw.com

MCGOWAN HOOD & FELDER, LLC

s/ Eve S. Goodstein

_____

Eve S. Goodstein
Federal ID: 12723
McGowan, Hood & Felder, LLC
1539 Health Care Drive
Rock Hill, South Carolina 29732
(803) 327-7800
(803) 328-5656 Facsimile
egoodstein@mcgowanhood.com

**ATTORNEYS FOR PLAINTIFF**

Rock Hill, South Carolina

September 12. 2021

9